UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                               :

                                  :

ANDREW VELEZ CONSTRUCTION, INC.,    :      Chapter 11
                                  :      Case No. 06-12765 (MG)

                       Debtor.    :

                                  :

-------------------------------------------------------------x
                                  :

ANDREW VELEZ CONSTRUCTION, INC.     :

                                  :      Adv. Proc. 07-01706 (MG)

                     Plaintiff,    :

             - against -          :

                                  :

                                  :

CONSOLIDATED EDISON COMPANY OF     :
NEW YORK, INC. and THE SWITZER       :
GROUP, INC.,                          :

                                  :

                     Defendants    :

-------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**A P P E A R A N C E S :**

MILBANK, TWEED, HADLEY & McCLOY LLP
*Attorneys for Consolidated Edison Company of New York, Inc.*
1 Chase Manhattan Plaza
New York, New York 10005
By:    Lena Mandel, Esq.
        Matthew S. Barr, Esq.

AKERMAN SENTERFITT WICKWIRE GAVIN
*Co-counsel for Consolidated Edison Company of New York, Inc.*
8100 Boone Boulevard, Suite 700
Vienna, Virginia 22182-2683
By:    Jeffrey G. Gilmore, Esq.
        Owen J. Shean, Esq.

ARENT FOX, LLP
*Attorneys for Debtor Andrew Velez Construction, Inc.*
1675 Broadway
New York, New York 10019
By:    David Pfeffer, Esq.

ORTIZ & ORTIZ, LLP
*Attorneys for Debtor Andrew Velez Construction, Inc.*
127 Livingston Street
Brooklyn, New York 11201
By:    Norma E. Ortiz, Esq.

**MARTIN GLENN,**
**United States Bankruptcy Judge**

Defendant Consolidated Edison Company of New York, Inc. ("Con Edison")

moved to dismiss portions of the adversary complaint ("Complaint") filed by the debtor,

Andrew Velez Construction, Inc. ("Debtor" or "Velez").  Velez was the general

contractor on a major construction project for Con Edison in Brooklyn, New York (the

"Project").  The Project experienced delays and substantial cost overruns, as well as

changes in the scope of the work.  Each side asserts that the other committed prepetition

defaults under the contract.  On December 8, 2006, Con Edison moved to accelerate the

Debtors time to assume or reject the executory construction contract.  After an initial

hearing on the motion, and before a scheduled evidentiary hearing, Con Edison and Velez

resolved the matter with Velez rejecting the contract on January 31, 2007.  (Case No. 06-

12765, ECF No. 18).  On May 16, 2007, Velez filed the Complaint naming Con Edison

and The Switzer Group, Inc. ("Switzer") as defendants (Adv. Proc. 07-01706, ECF No.

1).  Switzer, the Project architect, answered the Complaint so the only thing currently

pending before the Court is Con Edison's motion to dismiss.  For the reasons provided

below, the motion to dismiss is granted in part and denied in part.  As to certain claims

that are dismissed, leave to amend is granted; as to other dismissed claims, leave to

amend is denied on the grounds that amendment would be futile.

## DISCUSSION

### A.  Standards Governing a Motion to Dismiss

Con Edison's motion to dismiss is based on Fed. R. Civ. P. 12(b)(6), made

applicable in adversary proceedings by Fed. R. Bankr. P. 7012, for failure to state a claim

upon which relief can be granted.  Con Edison also moves to dismiss some claims under

Fed. R. Civ. P. 9(b), made applicable to adversary proceedings by Fed. R. Bankr. P.

7012, for failure to plead fraud with particularity.

In reviewing a motion to dismiss under Rule 12(b)(6), "a court merely assesses

the legal feasibility of the complaint, and does not weigh the evidence that may be

offered at trial." *In re Bayou Group, LLC*, 362 B.R. 624, 632 (Bankr. S.D.N.Y. 2007).

(citing *Global Entertainment, Inc. v. New York Telephone Co.,* 2000 WL 1672327, at *2

(S.D.N.Y. Nov. 6, 2000)).  A court "must construe any well-pleaded factual allegations in

the complaint in favor of the plaintiff." *Id.* (citing *Sykes v. James*, 13 F.3d 515, 519 (2d

Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994)).  "This is not to say, however, that every

statement in a complaint must be accepted as true." *Id.*  A court may not dismiss a

complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Id.* (citing

*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

"In resolving a Rule 12(b)(6) motion the Court may consider 'documents attached

to the complaint as exhibits, or incorporated in it by reference, to matters of which

judicial notice may be taken or to documents on which the plaintiff relied in bringing

suit.'" *Id.* (quoting *Mosello v. ALI, Inc.* (*In re Mosello*), 190 B.R. 165, 168 (Bankr.

S.D.N.Y. 1995), *aff'd*, 193 B.R. 147 (1996), *aff'd*, 104 F.3d 352 (2d Cir.1996)).

In any claim alleging fraud, Rule 9(b) requires that in "all averments of

fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity.  Malice, intent, knowledge, and other condition of mind of a

person may be averred generally."  FED. R. CIV. P. 9(b); *see also In re Marketxt*

*Holdings Corp.*, 361 B.R. 369, 395-96 (Bankr. S.D.N.Y. 2007) ("The pleadings

must adequately specify the statements that were allegedly false or misleading,

provide particulars as to the alleged falsity of the statements, and state the time

and place the statements were made and identity of the persons who made

them.").

With these principles in mind, the Court will address the counts of the Complaint

that Con Edison seeks to dismiss.

## B.  Count I – Fraudulent Conveyance Under § 548 of the Bankruptcy Code

### 1.  Section 548(a)(1)(A)

Con Edison contends that Count I – seeking relief based on alleged fraudulent

transfers – must be dismissed because it (a) fails to state a claim upon which relief may

be granted, and (b) fails to plead fraud with particularity.  Specifically, Con Edison

contends that the Complaint has no allegations whatsoever concerning the Debtor's own

intent to hinder, delay or defraud its creditors.

"A claim for actual fraudulent transfer pursuant to § 548(a)(1)(A) or applicable

State law must satisfy the requirements of Rule 9(b) of the Federal Rules of Civil

Procedure."  *In re Verestar, Inc.*, 343 B.R. 444, 459-60 (Bankr. S.D.N.Y. 2006).  "To

establish a claim for actual fraudulent transfer under § 548(a)(1)(A), a plaintiff must

plead facts showing that the transfer was made by the defendant with the intent to hinder,

delay or defraud present or future creditors of the transferor." *Id.* at 468.

With respect to the issue of pleading "intent," the court in *Bayou Group, LLC*

recently stated:

> As is clear from the statutory language ("if the debtor . . . made such
> transfer . . . with actual intent."), *the claim of actual fraud looks only to the*
> *fraudulent intent of the transferor/debtor.* Neither the language of Code
> Section 548(a)(1)(A) nor the case law requires the plaintiff to allege or
> prove that the transferee had any intent to hinder, delay or defraud or any
> knowledge of the transferor's fraudulent intent. *Although the knowledge*
> *or innocence of the transferee is irrelevant to a plaintiff's claim based on*
> *the transferor's intent to "hinder, delay, or defraud,"* it is central to the
> defendant-transferee's affirmative defense under Section 548(c).

362 B.R. at 631 (emphasis added); *see also In re Marketxt Holdings Corp.*, 361

B.R. at 395 ("Under the Bankruptcy Code, the plaintiff must establish the actual

fraudulent intent of the transferor/debtor . . . ."); *In re Actrade Financial*

*Technologies Ltd.*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) ("Cases under §

548(a)(1)(A) indicate that it is the intent of the transferor/[debtor] and not the

transferee that is relevant for purposes of pleading a claim for intentional

fraudulent conveyance under the Bankruptcy Code.").  Therefore, to the extent

that Count I was intended to assert a claim under § 548(a)(1)(A) of the

Bankruptcy Code, the claim must be dismissed because the Complaint has no

allegations whatsoever of the Debtor's own intent to hinder, delay or defraud its

creditors.[1]

---

[1]     It is not clear from reading the Complaint whether Velez intended to assert a fraudulent transfer
claim based on actual fraud.  But Con Edison moved to dismiss on that basis and Velez's opposition to the
motion argued that it intended to assert such a claim.  Velez's counsel also confirmed during argument that
Velez intended to assert a claim based on actual fraud.

Velez argues in opposition to the motion that Con Edison intended to hinder, delay or defraud other creditors of Velez and that Con Edison's intent should be imputed to Velez. The opposition brief argues that the Con Edison contract represented over 90% of Velez's business, giving Con Edison an effective economic stranglehold over Velez and enabling Con Edison to force Velez to follow Con Edison's directions. Cases hold that the intent of the transferee is imputed to the transferor only in extraordinary circumstances where the transferee controls the transferor. *See In re Marketxt Holdings Corp.*, 361 B.R. at 396 ("[I]ntent of the transferee is imputed to the transferor only where the transferee is in a position to control the debtor's disposition of his property.") (citing *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 443 (S.D.N.Y. 2001) (discussing this theory under § 548(a)(1)(A) of the Bankruptcy Code)).

Both parties here rely on *In re Adler*. The court in *In re Adler*, 263 B.R. 406, noted that imputation of the transferee's intent to the transferor was justified in the following circumstances: (1) where the person or entity exercising control over the disposition of the debtor's property stands in a position to do so by reason of a relationship of ownership, executive office or other insider role, *id.* at 447; (2) the application of agency principles dictates the result, *id.* at 448; (3) the controlling person is considered to stand in a fiduciary capacity or hold a position of trust in the transferor entity, *id.*; and (4) the rule imputes the fraudulent intent in order to recognize and discourage the misuse of the corporate form and insider status as instruments to commit fraud by means of transferring property between affiliated entities, *id.* at 448-49 (citations omitted). The district court ultimately reversed the bankruptcy court's ruling in *Adler* (even though there was evidence of an agency relationship), because the transferor and

6

the transferee were sufficiently independent that imposing the dominion and control theory was not warranted. *Id.* at 448-49 (holding that "[t]heir open legal relationship set forth in the . . . Agreement was arms-length, and their interests potentially hostile. The parties shared no continuous institutional channel through which the transference of fraudulent intent simultaneous with a disposition of property could be effected. Nor could [the transferee] have been regarded as [the transferor's] authorized agent in effectuating the property transfers at issue").

Similarly, in this case, the Debtor cannot establish that the relationship between the Debtor and Con Edison is one that would permit the application of the dominion and control theory. Con Edison and the Debtor are independent entities. Con Edison had no ownership interest in Velez and the two companies shared no common officers or directors. From the original contract between the parties and the subsequent Modification Agreement, both referenced in the Complaint and appearing elsewhere in the Court record (*see* Case No. 06-12765, ECF No. 4, Exhibits 3, 4 and 5), and therefore properly considered on this motion to dismiss, *see In re Bayou Group, LLC*, 362 B.R. at 633, it appears that Con Edison and Velez maintained an arms-length relationship at the start and continued as the construction project fell further behind and Velez's financial situation deteriorated. The Debtor has not provided any authority that where a creditor might be in a superior bargaining position, the creditor's fraudulent intent should be imputed to the transferor. Therefore, the Debtor cannot avail itself of the line of cases permitting imputation of fraudulent intent in cases where the transferee controls the transferor. *See, e.g, Marketxt Holdings Corp*., 361 B.R. at 396 (dismissing claim because, among other things, "the Complaint's allegations [were] not generally adequate

7

on the issue of control, and Plaintiffs certainly [did] not adequately pled [sic] that

Softbank was able to control the Debtor's disposition of its property."). None of the

allegations attempting to demonstrate control in an effort to support imputation of actual

fraudulent intent were included in the Complaint. Therefore, the dismissal of this portion

of the Complaint is required.

The Court also concludes that leave to amend should be denied because the

amendment would be futile. *Milanese v. Rust-Oleum Corp.*, 244 F. 3d 104, 110 (2d Cir.

2001) ("It is true that when a cross-motion for leave to file an amended complaint is

made in response to a motion to dismiss under Fed. R. Civ. P. 12(b)(6), leave to amend

will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6)

motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the

plaintiff can plead no set of facts that would entitle him to relief.") (citing *Ricciuti v.*

*N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)); *Bradley v. Nolan*, No. 03-1616,

2006 WL 3298384, at *2 (S.D.N.Y. Nov.  9, 2006) ("An amended complaint is futile if

the new claims cannot withstand a motion to dismiss."); *Ovadia Corp. v. Instyle*

*Jewellery,* No. 04-9135, 2005 WL 1560536, at *3 (S.D.N.Y. Jun. 30, 2005) ("[L]eave to

amend may be denied on grounds of futility only if the amendment would not be able to

survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6).").

During the argument of the motion to dismiss the Court asked Velez's counsel whether it

had any facts to support its argument for imputation of fraudulent intent other than the

facts included in its opposition brief.  Counsel confirmed that Velez cannot in good faith

make additional allegations.  As a matter of law the allegations included in the opposition

brief are insufficient to assert a fraudulent transfer claim for actual fraud based on

imputed intent.  Therefore, dismissal of this portion of Count I is warranted without leave to amend.

If Count I was based solely on § 548(a)(1)(A), the claim would be dismissed in its entirety.  But the Debtor also asserts a claim under § 548(a)(1)(B) based on an alleged constructive fraudulent transfer.

### 2.  *Section 548(a)(1)(B)*

Con Edison did not move to dismiss Count I to the extent that it alleges a constructive fraudulent transfer.  Therefore, this portion of Count I remains in the case. A brief discussion of the claim may help shape future proceedings.  A claim under § 548(a)(1)(B) is "based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee, and not on the basis of fraud."  *In re Verestar, Inc.*, 343 B.R. at 460.  A claim for constructive fraud pursuant to § 548(a)(1)(B) need only comply with the liberal pleading standards of Rule 8(a).  *Id.* at 468.  Velez contends that the release it provided Con Edison as part of the Modification Agreement, negotiated and signed within one year prior to Velez's chapter 11 filing, was a constructive fraudulent transfer because Velez gave up claims against Con Edison far more valuable than the consideration Velez received in the Modification Agreement.

To establish a claim for constructive fraudulent transfer under § 548(a)(1)(B), a plaintiff must allege facts showing that (i) the debtor had an interest in the property; (ii) a transfer of that interest occurred within the prescribed time period; (iii) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (iv) the debtor received less than reasonably equivalent value in exchange for such transfer.  *Id.* (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994)).  During the hearing

Velez and Con Edison both expressed interest in obtaining an early resolution of this claim as, they said, it could lead to a resolution of the overall case. Velez asked for permission to file a summary judgment motion on this claim. It seems doubtful to the Court that the issue of "reasonably equivalent value" can be resolved by summary judgment given the complexities of the contract background and what each party gave and received in the Modification Agreement.

As discussed during the hearing, the parties are encouraged to confer and suggest other alternatives that might lead to a prompt adjudication of this claim. Bifurcation of issues or claims with early trial on some issues alone may be possible if judicial efficiency will be served. But piecemeal litigation is often not to anyone's advantage, and certainly may not be in the overall interests of the prompt administration of justice. Various forms of binding alternate dispute resolution can also be utilized. For example, the parties may agree to conduct a "summary bench trial." *See Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 142-43 (2d Cir. 1998) ("Other circuits have held that, if the parties so stipulate, a court may conduct a bench trial based on the record compiled in summary judgment proceedings. . . . . And although the practice has never been explicitly authorized by this Court, we have on prior occasions noted its use without raising objection. . . . . Courts endorsing the practice have uniformly emphasized, however, that the parties must clearly waive their right to a full trial. . . . We today adopt the position of our sister circuits that a district court may decide a case by summary bench trial upon stipulation of the parties as long as the parties have willingly forgone their right to a full trial. But in doing so, we underscore that a district court's decision to proceed under Rule 52(a) rather than Rule 56 must be made clear to the parties before the

court can proceed to decide triable issues of fact.  This is especially important when all
the parties have argued that the case can and should be resolved by summary judgment.
In such situations, the possibility of confusion between a summary bench trial and
summary judgment is particularly acute because the parties are incorrectly arguing that
no issues of fact exist in the case.") (citations omitted); *see generally* Gerry Silver,
*Summary Bench Trial: Overlooked, Efficient Resolution* (N.Y. Law Journal March 19,
2007) (available at http://www.law.com/jsp/nylj/PubArticleNY.jsp?id=1174035811455).
Other alternatives may suggest themselves to counsel.  Or the case may simply proceed
according to the pretrial schedule already set by the Court for adjudication in the normal
manner.

## C.  Count II – Turnover Under § 542

Con Edison moves to dismiss Count II for failure to state a claim under § 542 of
the Bankruptcy Code.  Con Edison asserts that it is unclear whether the Debtor is seeking
turnover of its alleged "legal and equitable interest in its substantial claims" against Con
Edison of the "sums owing Velez under the terms of the [Contract]."  Con Edison further
argues that the Debtor cannot receive turnover of the legal and equitable interest in claims
that were waved in exchange for the Modification Agreement because they are not
property of estate, and will only be so if the Debtor prevails on its alleged fraudulent
transfers claims.  Additionally, Con Edison argues that the Debtor cannot receive
turnover of the sums allegedly owed under the terms of the contract because § 542(b)
only provides for turnover of an undisputed debt.

As with its response to the fraudulent transfer claims, Debtor has responded by
raising new factual matters that are not alleged in the Complaint.  The Debtor's response

alleges that while there are disputed claims, Con Edison holds over $1,000,000 in

undisputed funds, held as "retention" under the contract, which funds Debtor contends

constitute property of the estate and therefore are subject to turnover.  Con Edison's reply

first correctly notes that none of these new facts are alleged in the Complaint – indeed,

the turnover claim in the Complaint is not focused on undisputed "retention."  Con

Edison also argues that all of the amounts held as retention are properly being held under

the terms of the contract and, therefore, are not subject to recovery in a turnover action.

Section 542 of the Bankruptcy Code provides for turnover of property of the

estate:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

> (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 543 of this title against a claim against the debtor.

11 U.S.C. § 542.

"[P]roperty that has been fraudulently or preferentially transferred does not

become property of the estate until it has been recovered."  *Savage & Assocs., P.C. v.

Madl (In re Teligent Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005).  Therefore, any

alleged fraudulent transfer is not subject to turnover until it has been recovered and is

property of the estate.

Section 542(b) provides for turnover of undisputed debts. "It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *Hirsch v. London S.S. Owners Mut. Life Ins. Ass'n Ltd. (In re Seatrain Lines, Inc.)*, 198 B.R. 45, 50 n.7 (S.D.N.Y. 1996). "The terms 'matured, payable on demand, or payable on order' create a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed to the debtor." *In re CIS Corp.*, 172 B.R. 748, 760 (S.D.N.Y. 1994). Further, § 542(a) provides for turnover of "property that the trustee may use, sell or lease." 11 U.S.C. § 542(a). Because a disputed debt is not property that the trustee can use, sell or, lease, § 542(a) is inapplicable.

The Debtor essentially acknowledged during argument that Count II of the Complaint, as drafted, fails to state a turnover claim. The issue remains whether Debtor can assert a proper turnover claim for alleged undisputed "retention." Con Edison argues that it has a contractual right to withhold all of the retention, and, therefore, all of the retention is disputed. The Court is not prepared to say at this point that Velez cannot state a claim for some undisputed retention amount. Therefore, Count II will be dismissed with leave to amend.

**D.  Counts I and Counts III & IV - §§ 273 and 275 of the NY Debtor & Creditor Law and §§ 544 and 550 of the Bankruptcy Code**

Con Edison contends that Count I, which relies on § 548 of the Bankruptcy Code, and Counts III and IV, which rely on §§ 273[2] and 275[3] of the NY Debtor & Creditor Law, respectively, and §§ 544 and 550 of the Bankruptcy Code, should be dismissed to the extent that Velez is are seeking a declaration of the amounts due under the contract or monetary damages in the amount of $10,000,000 (plus interest, fees and costs).  Con Edison argues that declaratory relief or damages are not recoverable under the federal and state fraudulent transfer statutes.

The liability of a transferee of an avoided transfer under § 544[4] or 548 is governed by § 550 of the Bankruptcy Code.  Section 550 establishes that a trustee is permitted to recover "the property transferred, or, if the court so orders, the value of such property . . .

---

[2]    Section 273 of the New York Debtor & Creditor law provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

N.Y. Debtor & Creditor Law § 273.

[3]    Section 275 of the  New York Debtor & Creditor law provides:

> Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

N.Y. Debtor & Creditor Law § 275.

[4]    Section 544 of the Bankruptcy Code sets forth the trustee's powers to avoid liens and transfers. The powers granted by this section enable the trustee to avoid transfers and liens on the debtor's property that could have been avoided by a creditor under the applicable local law. 11 U.S.C. § 544.  Section 544(b), however, does not contain any substantive provisions that determine when a transfer is voidable, and instead incorporates and makes applicable nonbankruptcy law. *Hirsh v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 171 (Bankr. S.D.N.Y. 1998).  Section 544 limits the trustee's powers to recover avoidance actions and does not give the trustee power to pursue tort claims or other claims or causes of action that are separate from claims held by the estate.  5 COLLIER ON BANKRUPTCY ¶ 544.01.

." 11 U.S.C. § 550(a). Section 550(a) is intended to restore the estate to the financial

condition that it would have enjoyed if the transfer had not occurred. *Hirsh v. Gersten*

*(In re Centennial Textiles, Inc.),* 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998). The statute

does not contemplate an award for monetary damages, but a court may award the return

of its property or its equivalent value. The Bankruptcy Code does not provide guidance

on when the court should order payment for the value of the property rather than order

the return of the property. *Id.* Therefore, it is within the court's discretion to make the

determination. *Id.* Courts have considered the following factors in making the

determination whether the property or the value of the property should be returned to the

estate: whether the value of the property (1) is contested; (2) is not readily determinable;

or (3) is not diminished by conversion or depreciation. *Id.* (citing *Aero-Fastener, Inc. v.*

*Sierracin Corp.* (*In re Aero-Fastener, Inc.),* 177 B.R. 120, 139 (Bankr. D. Mass. 1994)).

Courts will generally permit the recovery of the value if the value is readily determinable

and a monetary award would work a savings to the estate. *In re Aero-Fastener, Inc.*, 177

B.R. at 139-40; *see also Drewes v. FM Da-Sota Elevator Co. (In re Da-Sota Elevator*

*Co.),* 939 F.2d 654, 655 n. 2 (8th Cir.1991) (stating that a court will not order the

recovery of a wasting asset pursuant to § 550(a)); *In re First Software Corp.,* 107 B.R. at

423-24 ("When a debtor cannot be made whole by the return of property lost through an

avoidable transfer because of depreciation in value of the property, the court may enter an

award of money judgment equal to the property's value as of the date of the petition.").

The court may order turnover of the property or designate the value of the property as an

issue for trial. *See In re Centennial Textiles, Inc.,* 220 B.R. at 177 (holding that the

factors favored turnover of the property at issue and, therefore, did not require

designating the value of the property as an issue for trial).

### 1. *Declaratory Relief*

With respect to Count I, Con Edison seeks to dismiss the request for declaratory

relief (a declaration of the value of Debtor's rights under the contract).  Con Edison

applies the three factors from *Centennial Textiles,* 220 B.R. at 176, that courts apply in

determining whether to return the property or the value of the property to the debtor.  Con

Edison identifies the property to be an unliquidated breach of contract claim with a value

that is "disputed and hard to determine."  Con Edison also asserts that the factors do not

entitle Velez to any form of relief other than setting aside the Modification Agreement,

and then allowing Velez to attempt to enforce its claims through a breach of contract

action.  Velez argues that it is entitled to plead claims – including the forms of relief

requested – in the alternative and that it is premature for the Court to decide now that

declaratory relief is unavailable.  The Court agrees with Velez.  While Con Edison may

in the end have the stronger side of the argument, the issue need not be decided at this

time.  Therefore, the motion to dismiss the request for declaratory relief is denied.

### 2. *Monetary Damages*

Con Edison further seeks to dismiss the Debtor's request for monetary damages

under Counts I, III and IV.[5]  However, §550(a) does not provide for the recovery of

monetary damages for a voidable transfer and case law does not support an award of

monetary damages.  *See Morris v. Kansas Drywall Supply Company, Inc. (In re Classic*

---

[5]      In footnote 4 of Con Edison's memorandum of law it also seeks to dismiss the request for
monetary damages for Count V under § 276 of New York Debtor & Creditor Law under the same theory.

*Drywall, Inc.),* 127 B.R. 874, 876 (D. Kan.1991) ("Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred."). Under § 550, if the value of the property transferred by the Debtor exceeds the value given by the transferee, the transfer will be avoidable only to the extent of the excess. 7 COLLIER ON BANKRUPTCY ¶ 550.02[1]. Therefore, when a trustee seeks to recover the property transferred or its value, the recovery may be made only to the extent the transfer was avoided. *Id.* The trustee is not entitled to double recovery, or a windfall that would benefit the estate. *McCord v. Agard (In re Bean),* 252 F.3d 113, 117 (2d Cir. 2001) (holding that under § 550 the trustee is only entitled to recover the equity the debtor held in the property the day he filed for bankruptcy). Therefore, to the extent that Counts I, III, IV, and V seek an award of monetary damages, the claims are dismissed.

### E. Counts V and VI - § 276 and § 276(a) of New York Debtor & Creditor Law

Con Edison moves to dismiss, pursuant to Fed. R. Civ. P. 9(b), the claims asserted under § 276[6] and § 276-a[7] of the New York Debtor & Creditor Law because the Debtor

---

[6]        Section 276 of the New York Debtor & Creditor Law, Conveyance made with intent to defraud, provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. Debtor & Creditor Law § 276.

[7]        Section 276-a of the New York Debtor Creditor Law, which provides Attorneys' fees in action or special proceeding brought under § 276, provides:

> In an action or special proceeding brought by a creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, in which action or special proceeding the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors shall recover

failed to plead with particularity any allegations with respect to the Debtor's intent to

defraud its creditors.  Con Edison asserts the transferor's intent is the only party's intent

that is relevant to these claims.  In one respect, Con Edison is mistaken.  Under the New

York statute, unlike a claim under Bankruptcy Code § 548(a)(1), Velez must plead

fraudulent intent of both the transferor and the transferee under § 276.  *See In re Marketxt*

*Holdings Corp.,* 361 B.R. at 396 (noting that the debtor "must plead the intent of the

transferor (under the Bankruptcy Code) and the intent of the transferor and transferee

(under NYDCL)"); *Picard v. Taylor* (*In re Park South Securities, LLC*), 326 B.R. 505,

517 (Bankr. S.D.N.Y. 2005) ("The 'intent' that must be established under section 548(a)

is the *debtor's* actual fraudulent intent; under section 276 of the NYDCL, the Trustee

must establish both the debtor's *and* the transferee's actual fraudulent intent.") (citation

omitted; emphasis added); *but see HBE Leasing Corporation v. Frank,* 61 F.3d 1054,

1059 n. 5 (2d Cir. 1995)) (stating that to prove actual fraud under § 276, a creditor must

show intent to defraud on the part of the transferor); *Le Café Crème, Ltd. v. Le Roux* (*In*

*re Le Cafe Creme, Ltd.*), 244 B.R. 221, 239 (Bankr. S.D.N.Y. 2000) (stating that under §

276, "it is the intent of the transferor and not that of the transferee that is dispositive.").

In any event, the transferor's intent remains the key element of this claim and an

allegation of the Debtor's intent is lacking in the Complaint.

---

judgment, the justice or surrogate presiding at the trial shall fix the reasonable attorney's
fees of the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors
in such action or special proceeding, and the creditor, receiver, trustee in bankruptcy, or
assignee for the benefit of creditors shall have judgment therefore against the debtor and
the transferee who are defendants in addition to the other relief granted by the judgment.
The fee so fixed shall be without prejudice to any agreement, express or implied, between
the creditor, receiver, trustee in bankruptcy, or assignee for the benefit of creditors and
his attorney with respect to the compensation of such attorney.

N.Y. Debtor & Creditor Law § 276-a.

Con Edison asserts that the allegations of fraud that the Debtor made for the first time in its opposition brief – that Con Edison was in such a position of dominance over the Debtor to control the Debtor's property and that such dominance and control over the Debtor justifies imputing the transferee's intentional fraud to the transferor – should not be considered because it is an allegation outside of the four corners of the Complaint. *See Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F.3d 660, 662 (2d Cir. 1996) ("In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."). The Complaint does not plead any of the facts alleged in ¶ 6 of the Debtor's opposition brief.[8] The claim as drafted is limited to the allegation that "the Modification Agreement was made with the actual intent to hinder, delay or defraud present or future creditors in violation of Section 276 of the New York State Debtor and Creditor Law." Complaint at ¶ 70. Because the Debtor fails to plead fraud under § 276 with particularity, the claim under § 276, as well as the claim for attorney's fees under § 276-a (permitting recovery of attorney's fees for a claim under § 276), likewise is insufficient.

As with Count I, the issue here is whether to permit Velez leave to amend. The same reasoning that precludes imputation of the transferee's intent with respect to Count

---

[8]    Debtor's opposition brief asserts the following: "[T]he Con Edison project was the primary source of the Debtor's income when the transfer occurred; the receivables due from Con Edison constituted over 92% of the Debtor's accounts receivables. Con Edison was aware of the fact that the Debtor was in dire need of capital from the project when Con Edison presented the Release to the Debtor. Con Edison knew that the Debtor had no choice but to sign the Release. Con Edison also knew that by requiring the Debtor to use the retainage funds to pay obligations that had yet to be incurred, instead of the obligations that gave rise to the retainage in the first place, payment to creditors would, at a minimum, be hindered and/or delayed. As such, the Debtor may be able to submit sufficient evidence to the Court that Con Edison's control over this Project."

I, requiring dismissal without leave to amend, applies here as well.[9] *See* Section B,

*supra*, at 8.  Therefore, Counts V and VI are dismissed without leave to amend.

### F.  Count VII – Fraudulent Inducement

Count VII alleges fraudulent inducement with respect to the negotiation and

execution of the Modification Agreement.  Velez contends that Con Edison fraudulently

induced it to execute the Modification Agreement by misrepresenting its true intent not to

pay in accordance with the Contract.  Complaint at ¶ 82 ("Con Edison had no intention of

paying the Debtor as promised when it entered into the Modification Agreement.").  Con

Edison contends that Count VII of the Complaint is devoid of any information required

by Rule 9(b) and is merely duplicative of Count VIII (breach of contract).  Velez's

opposition brief did not address this argument.

To satisfy Rule 9(b), a plaintiff must ordinarily specify the time, place, speaker,

and content of the alleged misrepresentations.  *See Caputo v. Pfizer, Inc.*, 267 F.3d 181,

191 (2d Cir. 2001).  In addition, the complaint should explain how the misrepresentations

were fraudulent and "plead those events which give rise to a strong inference that the

---

[9]     The Debtor asserts that even if it failed to plead Con Edison's actual fraudulent intent, Con
Edison's fraudulent intent can be proven by circumstantial evidence or "badges of fraud."  Badges of fraud
involve circumstances so commonly associated with fraudulent transfers that there presence gives rise to an
inference of fraudulent intent.  Badges of fraud include:

> (1)  the lack or inadequacy of consideration; (2) the family, friendship or close associate
> relationship between the parties; (3) the retention of possession, benefit or use of the
> property in question; (4) the financial condition of the party sought to be charged both
> before and after the transaction in question; (5) the existence or cumulative effect of a
> pattern or series of transactions or course of conduct after the incurring of debt, onset of
> financial difficulties, or pendency or threat of suits by creditors; and (6) the general
> chronology of the events and transactions under inquiry.

*In re Marketxt Holdings Corp.*, 361 B.R. at 396 (citations and quotations omitted).

But Con Edison's (poorly) alleged fraudulent intent is not relevant.  It is Velez's intent as
transferor that controls.

defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for

the truth." *Id.* at 191 (citing *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962

(2d Cir. 1987)).

> Here, the Complaint merely states that:
>
> As a result of Con Edison's numerous misrepresentations and material breaches of the agreement, including, but not limited to, Con Edison's failure to authorize and/or make payments to Velez as required by the Agreement, Velez incurred substantial costs, damages and delay as a result of such breaches."

Complaint at ¶ 79.

The Complaint does not set forth the time, place or specific statement

upon which the allegation of fraudulent inducement is based.  Further, nowhere in

the Complaint is there an identification of the person making such

misrepresentations.  Finally, the Debtor does not plead the events giving rise to a

strong inference that the defendant had intent to defraud, knowledge of the falsity,

or a reckless disregard for the truth.  For these reasons, Velez has failed to plead

fraudulent inducement with the particularity demanded by Rule 9(b).  Therefore,

Count VII may be dismissed on this basis alone.

In addition, however, Count VII should be dismissed because it is duplicative of

Count VIII.  The predicate for fraud in the inducement in Count VII is the allegation that

"Con Edison had no intention of paying Velez as promised."  Under New York law,

"where a fraud claim arises out of the same facts as plaintiff's breach of contract claim,

with the addition only of an allegation that defendant never intended to perform the

precise promises spelled out in the contract between the parties, the fraud claim is

redundant and plaintiff's sole remedy is for breach of contract.  In other words, simply

dressing up a breach of contract claim by further alleging that the promisor had no

intention, at the time of the contract's making, to perform its obligations thereunder, is

insufficient to state an independent tort claim." *Telecom Intern. America, Ltd. v. AT & T

Corp.*, 280 F.3d 175, 196 (2d Cir. 2001). In order to maintain a fraud claim arising from

a breach of contract, a plaintiff must plead: (1) "a legal duty separate from the duty to

perform under the contract"; (2) "a fraudulent misrepresentation collateral or extraneous

to the contract"; or (3) "special damages that are caused by the misrepresentation and

unrecoverable as contract damages." *Draskicevic v. Entersport Management, Inc.*, No.

03 Civ. 8447, 2004 WL 1575393 at *1 (S.D.N.Y. June 15, 2004) (citing

*Bridgestone/Firestone v. Recovery Credit Servs.*, 98 F.3d 13, 20 (2d Cir. 1996)). The

Debtor has alleged none of the foregoing in the Complaint. When questioned during

argument, Velez's counsel acknowledged that it could not plead the required elements.

Therefore, Count VII is dismissed without leave to amend.

## G.  Count XI – Lost Profits

Con Edison asserts that Count XI should be dismissed pursuant to Rule 12(b)(6)

because New York law does not recognize an independent claim or cause of action for

lost profits, arguing that lost profits are only recoverable as a remedy for a breach of

contract or the commission of a tortious act. *See LTV Aerospace & Def. Co. v. Thomson-

CSF, S.A. (In re Chateaugay)*, 155 B.R. 636, 657-58 (Bankr. S.D.N.Y.) ("It is the breach

of contract or the tortious act that constitutes the cause of action; lost profits is the

remedy available to the injured party. *Since lost profits and consequential damages are

not 'claims' upon which relief can be granted, LTV's motion to dismiss is granted*." *Id*.

(emphasis added), *aff'd*, 198 B.R. 848 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir.

1997).  The Complaint includes a breach of contract claim that Con Edison did not move

to dismiss.  Velez's counsel acknowledged during argument that lost profits is not a

separate cause of action.  Therefore, Count XI is dismissed.

## H.  Counts XV and XVI – Quantum Meruit and Unjust Enrichment

Con Edison contends that since there is a written contract covering this dispute,

the Debtor' quantum meruit and unjust enrichment claims must be dismissed.

Under New York law, the existence of a valid and enforceable written contract

governing a particular subject matter ordinarily precludes recovery in quasi contract for

events arising out of the same subject matter.  *Clark-Fitzpatrick, Inc. v. Long Island R.*

*Co.*, 70 N.Y.2d 382, 388 (Ct. App. 1987).   A "quasi contract" only applies in the absence

of an express agreement, and is not really a contract at all, but rather a legal obligation

imposed in order to prevent a party's unjust enrichment.  *Id.*   "Quasi contracts are not

contracts at all, although they give rise to obligations more akin to those stemming from

contract than from tort.  The contract is a mere fiction, a form imposed in order to adapt

the case to a given remedy.  Briefly stated, a quasi-contractual obligation is one imposed

by law where there has been no agreement or expression of assent, by word or act, on the

part of either party involved.  The law creates it, regardless of the intention of the parties,

to assure a just and equitable result."  *Id.* at 388-89.

Velez argues that at this stage of the case it should be permitted to plead in the

alternative.  *See Berk v. Tradewell, Inc*., No. 01 Civ. 9035, 2003 WL 21664679, at *8

(S.D.N.Y. 2003) ("[Defendant] moves to dismiss, arguing that the existence of a valid

contract precludes a claim in quantum meruit.  This argument misses the point.  Although

[defendant] is correct that plaintiffs are precluded from recovering under both breach of

contract and quantum meruit, they may plead both in the alternative.")  Con Edison, on

the other hand, argues that the acknowledged existence of the contract (now rejected)

with Velez requires dismissal of these claims.  *See American Medical Ass'n v. United*

*Healthcare Corp.*, No. 00 Civ. 2800, 2007 WL 683974 (S.D.N.Y. 2007) (finding that

unjust enrichment claim was precluded by existing contracts governing the subject matter

of the dispute and, therefore, the claim should be dismissed).  The Complaint here raises

issues whether Velez was requested by Con Edison to perform work beyond the scope of

the contract for which Velez expected compensation and which may be compensable

under quantum meruit if not under the Contract.  Con Edison claimed during argument

that the quantum meruit claim would unnecessarily expand the scope of discovery, but on

questioning by the Court, Con Edison could point to nothing specific.    At this stage of

the proceeding, the Court believes it is premature to preclude pleading in the alternative.

Therefore, the motion to dismiss Counts XV and XVI is denied.

## I.   Counts IX – Trust Fund Violations Under New York Lien Law Article 3-A

Count IX of the Complaint seeks recovery from Con Edison for trust fund

violations pursuant to New York Lien Law Article 3-A (the "Lien Law").  The Debtor

asserts that, pursuant to the provisions of the Lien Law, sums to be paid to the Debtor and

its subcontractors and suppliers, or any full or partial satisfactions thereof, constitute trust

funds to be applied to the payment of claims of the Debtor and all subcontractors and

suppliers which accrued during the construction project.  The Debtor further claims that

Con Edison has applied the trust funds previously held or now being held for purposes

other than paying the claims of the Debtor and subcontractors and suppliers on the

Project, constituting unauthorized, unjustified, and improper payments and diversions of trust funds by operation of law.

Con Edison moves to dismiss Count IX pursuant to Rule 12(b)(6), contending that the Debtor has failed to allege facts sufficient to sustain a cause of action for diversion of trust funds. Specifically, Con Edison argues that the Lien Law trust does not apply to an owner's own funds. Further, Con Edison claims that only funds originating from one of seven sources specifically enumerated in Lien Law § 70(5) qualify as owner trust funds, and that the Debtor's allegation fails to allege receipt of any of the categories set forth by § 70(5).

Debtor's opposition brief argues that dismissal of the Lien Law claim on a motion to dismiss would defeat the purpose and intent of Article 3-A of the Lien Law and the protections it affords contractors like the Debtor.

Count IX of the Complaint is premised upon the Debtor's assertion that the Lien Law imposes a trust upon amounts allegedly due the Debtor and/or its subcontractor by an owner for work performed. Lien Law § 70(5) provides:

> 5. The assets of the trust of which the owner is a trustee are the funds received by him and his rights of action for payment thereof
>
>> A. under a building loan contract;
>> B. under a building loan mortgage or a home improvement loan;
>> C. under a mortgage recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion of the improvement;
>> D. as consideration for a conveyance recorded subsequent to the commencement of the improvement and before the expiration of four months after the completion thereof;
>> E. as consideration for, or advances, secured by, an assignment of rents due or to become due under an existing or future lease or tenancy of the premises that are the subject of the improvement, or of any part of such premises, if the assignment is executed subsequent to the commencement of

the improvement and before the expiration of four months
after the completion of the improvement or if it is executed
before the commencement of the improvement and an express
promise to make an improvement, or an express representation
that an improvement will be made, is contained in the
assignment or given in the transaction in which the assignment
is made;

F.  as proceeds of any insurance payable because of the
destruction of the improvement or its removal by fire or other
casualty, except that the amount thereof required to reimburse
the owner for premiums paid by him out of funds other than
trust funds shall not be deemed part of the trust assets;

G.  under an executory contract for the sale of real property and
the improvement thereof by the construction of a building
thereon.

N.Y. Lien Law § 70(5).

It is settled law that only funds originating from one of the seven sources
enumerated in Lien Law § 70(5) qualify as owner trust funds. *Bristol, Litynski, Wojcik,
P.C. v. Elliot*, 436 N.Y.S.2d 190, 191 (Sup. Ct. 1981). The court in *Elliot* stated that
when monies are used to pay for improvements that did not originate from a source
described in § 70(5) but are the owner's funds, no owner trust fund has been created. *Id.*
In *237 Constr. Corp. v. St. Stanisluas Roman Catholic Church*, 219 N.Y.S.2d 312, 313
(Sup. Ct. 1961), the court stated that § 70(5) "relate[s] exclusively to funds coming into
the hands of [an] owner from outside sources. Absent allegations showing that the funds
upon which the trust is sought to be imposed emanate from the sources prescribed in
[§70(5)] of the Lien Law, the complaint is insufficient as a matter of law." *Id.*

26

The Debtor relies on *Wildman & Bernhardt Const., Inc. v. BPM Associates, LP*, 708 N.Y.S.2d 400 (App. Div. 2000), for the proposition that a complaint's failure to allege a diversion of trust funds with particularity does not extinguish the claim since proof of a diversion of trust funds is not a condition precedent to an action for an accounting and other relief under Lien Law. But, as Con Edison argues, the issue in *Wildman* was the diversion of trust funds, not the existence of a trust fund. In this case, the Debtor failed to plead the elements of a claim under § 70(5). Nowhere in the Complaint did the Debtor allege receipt of any of the categories of funds enumerated in § 70(5) of the Lien Law. As a result, the Debtor has failed to state a claim upon which relief can be granted. Further, Velez's counsel acknowledged during argument that, if granted leave to amend, it could not allege in good faith that Con Edison used funds from one of the seven sources. Therefore, Velez has failed to state a claim upon which relief can be granted and Count IX is dismissed without leave to amend.

## J.   Counts X – Defamation

In Count X, Velez alleges that Con Edison made two defamatory statements – that (1) Velez "defaulted on its obligations under the Agreement," Complaint at ¶ 100, and (2) Velez "misappropriated Project funds," *id*. Con Edison moves to dismiss Count X for failure to state a cause of action for defamation under New York law. With respect to the first of the two alleged defamatory statements – Velez "defaulted on its obligations under the Agreement" – Con Edison argues that Velez is required to plead who made the statement, to whom the statement was made, and when it was made. Additionally, Con Edison argues that Velez is required to allege "special damages," because the statement is not defamatory *per* se. Con Edison asserts that because the Debtor did not identify actual

economic or pecuniary loss and did not relate alleged losses to the alleged defamatory statements, it does not meet the pleading requirements for defamation under New York law.

With respect to the second statement – Velez "misappropriated Project funds" – Con Edison does not dispute for purposes of the motion that the statement is defamatory *per se*, but Con Edison argues that Velez is required to plead who made the statement, to whom the statement was made, and when it was made. Con Edison acknowledges that special damages do not need to be alleged for statements that are defamatory *per se*.

Velez argues that defamatory statements need only be plead with sufficient specificity to put the defendants on notice and allow Con Edison to adequately form a responsive pleading. With respect to the statement that Velez "misappropriated Project funds," Velez argues that it does not have to allege special damages since the statements made by Con Edison were defamatory *per se*. Velez argues that this alleged statement would be a death knell to its future business opportunities.

Under New York law, a claim for defamation requires "an adequate identification of the purported communication, and an indication of who made the communication, when it was made and to whom it was communicated." *Nas Elecs. v. Transtech Elecs.*, 262 F. Supp.2d 134, 149 (S.D.N.Y. 2003); *accord Mahmud v. Bon Secours Charity Health Sys.*, 289 F. Supp.2d 466, 476 (S.D.N.Y. 2003) (dismissing a slander claim for failure to state a claim for which relief can be granted because of the failure of the plaintiff to identify who made the alleged defamatory statements, when they were made and to whom they were communicated).

Further, a claim for defamation requires the plaintiff to allege special damages unless the statement is defamatory *per se*. *See Tufano v. Schwartz*, 464 N.Y.S.2d 211, 212 (App. Div. 1983) ("As such, it was not libelous per se. Plaintiff's failure to allege special damages in the complaint therefore requires dismissal for failure to state a cause of action."). Statements are defamatory *per se* if they impugn the basic integrity or credit worthiness of the plaintiff. *See Cambridge Assocs. v. Inland Vale Farm Co.*, 116 A.D.2d 684, 685 (N.Y. App. Div. 1986) (holding that claim properly dismissed where plaintiff alleged libel per se since statements failed to impugn basic integrity or credit worthiness of plaintiff's business). Special damages require economic or pecuniary loss and must relate the alleged losses to the allegedly defamatory statements. *Liberman v. Gelstein*, 80 N.Y.2d 429, 434-35 (Ct. App. 1992); *L.W.C. Agency, Inc. v. St. Paul Fire and Marine Ins. Co.*, 509 N.Y.S.2d 97, 100 (App. Div. 1986) ("In pleading special damages, actual losses must be identified and casually related to the alleged tortuous act."). Special damages must be pled with particularity and cannot merely aver general damages to the plaintiff's business. *L.W.C. Agency, Inc.*, 509 N.Y.S.2d at 100.

Count X of the Complaint states that "Con Edison falsely advised numerous individuals and entities including, but not limited to: (a) Gilbert Rivera; (b) Congressman Edolphus Towns' representative Karen Johnson; (c) Serafin Mariel; (d) Attri Roofing; and (e) Armando Rodriguez that Velez defaulted in its obligation under the Agreement and misappropriated Project funds." Complaint at ¶ 100. The Debtor claims that it has and will continue to sustain damages due to the defamatory statements, but Velez acknowledged during argument that the Complaint does not allege "special damages."

Applying the applicable pleading standards, Velez has failed to state a claim for defamation under New York law. While Velez has identified to whom the alleged statements were made, it has not identified who made the statements or when they were made. To the extent that special damages are required, Velez has also failed to plead such damages. During the argument, Velez's counsel represented that Velez can now identify the "who" and "when" requirements. Therefore, Count X is dismissed with leave to amend. While it is unclear whether Velez can allege special damages resulting from the first alleged defamatory statement, it will be given an opportunity to do so.

## CONCLUSION

For the foregoing reasons, Con Edison's motion to dismiss is granted in part and denied in part, with leave to amend granted as to certain of the dismissed claims but not as to others. Velez shall file an amended complaint within 10 days after the date of this opinion. Con Edison shall file its response to the amended complaint within 10 days thereafter. In the event that Con Edison files a motion to dismiss any of the amended claims, it should nevertheless answer the remaining claims. The Court has already entered a Case Management and Scheduling Order setting forth dates for discovery and further proceedings.

**IT IS SO ORDERED.**

Dated: August 14, 2007
New York, New York

_____/s/Martin Glenn_____ _____
THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE